UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| STEPHEN EUGENE HUNTER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 4:13-cv-4017-SLD-JEH |
| ROCK ISLAND HOUSING AUTHORITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

ORDER

Plaintiff Stephen Hunter is suing the Rock Island Housing Authority ("RIHA") under Title VIII of the Civil Rights Act, 42 U.S.C. §§ 3601–3631,[1] alleging that RIHA racially discriminated against him when it evicted him. Before the Court is RIHA's Motion for Summary Judgment, ECF No. 19. For the following reasons, the motion is GRANTED.

**BACKGROUND[2]**

RIHA provides low income housing to the residents of Rock Island County and surrounding communities. It receives funding from the United States Department of Housing and Urban Development. Hunter was a resident of one of RIHA's housing projects, a high-rise known as Spencer Towers, from October 19, 1992 to November 26, 2007.

On May 19, 2007, Hunter urinated in a Spencer Towers common area. On May 20, 2007, he did so again. On May 26, 2007, RIHA served Hunter at his residence with a 30-Day

---

[1] Hunter does not specify this or any federal law in his Complaint, but RIHA infers and the Court agrees that Hunter's claim falls under Title VIII, partly because of Hunter's previous, already-denied Fair Housing Discrimination Complaint to the Illinois Department of Human Rights, RIHA Supporting Exhibits Ex. J, ECF No. 22. A district court is "required to liberally construe the *pro se* plaintiff's pleadings, however inartfully pleaded," *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1183 (7th Cir. 1989) (internal quotation marks omitted) (collecting cases). In any case, the Court's decision does not depend on the theory of liability Hunter elected, but on the nature of the injury for which he seeks redress. *See infra*, p. 8.

[2] Except where otherwise noted, this material is taken from RIHA's statement of undisputed facts, ECF No. 21.

1

Notice to Vacate, which cited his two public acts of urination as a violation of his lease agreement. Per RIHA procedures, Hunter requested an informal hearing to contest the Notice. In his request, Hunter stated: "Needlessly [sic] I categolicy [sic] deny this incident happened, and, sure as hell was not me," May 29, 2007 Hunter Letter, RIHA Supp. Exhibits Ex. D 4, ECF No. 22. He did not mention a racial theory of his eviction. On July 6, 2007, the informal hearing was held. Dr. Melvin Grimes reviewed evidence offered by both sides, which consisted in substantial part of two surveillance videos showing Hunter on the nights in question. Grimes Report, RIHA Supp. Exhibits Ex. E 2. In the videos, Hunter appears to enter a stairwell, look around, unfasten his pants, proceed to a corner, and urinate. *Id.* Grimes upheld the Notice.

Hunter then requested a formal hearing, per RIHA procedures. In his request for a formal hearing, he mentioned his race-based theory for the first time, claiming that "[RIHA] certainly show racism, and discrimination . . . Here we have the resident in apt. 813 charged with the same offense, and he likely never went to the second step, before it was reversed." Jul. 10, 2007 Hunter Letter, RIHA Supporting Exhibits Ex. F. He also alleged that "[G]rimes is a racist, beyond belief," and claimed in support that "[w]hen he came into the bldg. the day of [the] informal hearing, he immediately went over and hugged the ole chicken theif [sic], (627), an african [sic], Yet He NEVER HUGS ANY WHITE WOMAN LIVING HERE! !!!" *Id.* The formal hearing was held on July 23, 2007. The formal hearing panel upheld the Notice. Hunter then refused to vacate his apartment.

In response, RIHA filed a Forcible Entry and Detainer Complaint against Hunter in the Fourteenth Judicial Circuit Court, Rock Island County, Illinois. A trial was held. Hunter admitted that he had urinated in the stairwell twice. On October 24, 2007, the Circuit Court found that Hunter had urinated in the stairway twice, and that these actions failed to comply with

various portions of his lease agreement listed under "Tenant's Obligations." Circuit Court of Rock Island Opinion and Order, RIHA Supporting Exhibits Ex. B 3. The Circuit Court further found that Hunter had violated 24 C.F.R. 966.4(l)(2)(1)(B). The Circuit Court held that these violations "established grounds for termination of Hunter's tenancy," entered judgment in favor of RIHA, and granted RIHA possession of the premises. *Id.* at 5. Hunter did not raise racial discrimination as a defense during these state court proceedings.

On March 20, 2008, Hunter filed a Fair Housing Discrimination Complaint with the Illinois Department of Human Rights ("IDHR"), claiming that RIHA discriminated against him by evicting him for the urinations, and raising the same arguments that he had raised in his letter requesting a formal hearing. On January 28, 2011, IDHR found no evidence that RIHA's articulated, legitimate, non-discriminatory reason for evicting Plaintiff was a pretext for unlawful discrimination.

Plaintiff filed his Complaint in the instant matter on March 5, 2013, alleging that he was made to leave Spencer Towers when other similarly situated African-American tenants were not. Compl. 5–6. Plaintiff requested four times that counsel be appointed to him, and each time the Court denied his motion because he had not explained why he was unable to litigate his case himself. *See* June 17, 2013 Text Order; October 8, 2013 Order, ECF No. 9; April 4, 2014 Text Order; September 9, 2014 Text Order. RIHA moved for summary judgment on December 18, 2014. Instead of responding, Hunter sent a letter to the Clerk saying: "At this point there isn't much more I can do in this case. The gov gets by with blatant discrim., but oh well." Hunter Letter, ECF No. 24. He continues: "I was under the clear understanding, by the IL dept of human rights, and its review, I could go into a state ct., or fed ct. ASK for an attorney to be

3

appointed and one may. . . . NOT this Judge Ms. Darrel [sic]." *Id.* He concludes: "So it goes down. I thank you." *Id.*

## DISCUSSION

### I. Legal Standard on a Motion for Summary Judgment

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial— that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

The movant in a summary judgment motion bears the initial burden of production— pointing the court to the materials in the record that "demonstrate the absence of a genuine issue of material fact" for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, however the requirements on the movant are "not onerous," and "may be discharged by showing—that is, point[ing] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (internal quotation marks omitted). Once the movant discharges her burden, the burden shifts to the nonmovant to "make a showing sufficient to establish the existence of an element essential to

that party's case." *Celotex*, 477 U.S. at 322. To satisfy this burden, a nonmovant must "go beyond the pleadings . . . to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski*, 712 F.3d at 1169 (internal quotation marks omitted). "A plaintiff may not defeat the defendant's properly supported motion for summary judgment without offering any significant probative evidence tending to support the complaint." *Tri-Gen Inc. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO*, 433 F.3d 1024, 1038 (7th Cir. 2006) (internal quotation marks omitted).

## II.     Analysis

RIHA argues that Hunter's claim should be dismissed because it is barred by *Rooker-Feldman* doctrine, Mem. Supp. Mot. Summ. J. 6–12, ECF No. 20, or, in the alternative, because Hunter's claim is res judicata, *id.* at 12–15, or because he fails to make out a prima facie case for racial discrimination, *id.* at 15–18. Because the Court agrees that *Rooker-Feldman* bars jurisdiction over the matter, the Court does not reach RIHA's second and third arguments.

RIHA's motion is unopposed. Under the Local Rules for the Central District of Illinois, unopposed motions for summary judgment are deemed admitted. Local Rule 7(D)(2). However, this does not mean the motion is automatically granted. *See Pike v. Nick's English Hut, Inc.*, 937 F. Supp. 2d 956, 959 (S.D. Ind. 2013) ("[E]ntry of a summary judgment motion as unopposed does not automatically give rise to a grant of summary judgment. Instead 'the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate.'" (quoting *Aguiar–Carrasquillo v. Agosto–Alicea*, 445 F.3d 19, 25 (1st Cir. 2006))). The Court will thus review

RIHA's Motion for Summary Judgment, and will view the evidence in the light most favorable to Hunter, but is bound to accept the undisputed facts filed by RIHA in support of its motion.[3]

RIHA argues that *Rooker-Feldman* bars this Court's jurisdiction because Hunter's lawsuit seeks appellate review of a state court decision. Mem. Supp. Mot. Summ. J. 6. *Rooker-Feldman* doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, a disappointed state court plaintiff filed his suit in federal court, claiming that the state court's decision rested on an unconstitutional statute. The district court found that it had no jurisdiction over the case, and the Supreme Court agreed, on the ground that federal district courts' jurisdiction is strictly original, adding that the only federal court that may reverse or modify a state court's final decision is the Supreme Court. *Rooker*, 263 U.S. at 415–16. In *Feldman*, an applicant to the District of Columbia bar association who was rejected sought review of that decision in a federal district court. The Supreme Court ruled that, to the extent the plaintiffs sought review of a final state court judgment, the district court had no authority to consider the matter. *Feldman*, 460 U.S. 483. *Rooker-Feldman* thus stands for the proposition that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring). It is a jurisdictional bar to a court's consideration of a case, rather than an affirmative defense, unlike the highly similar doctrine of res judicata, or claim preclusion.[4] *See Fayyumi v. City of Hickory Hills*, 18 F. Supp. 2d 909, 914 (N.D. Ill. 1998).

---

[3] While Hunter's cryptic final handwritten message, ECF No. 24, appears to express resignation in the face of the Court's denial of his motions to appoint counsel ("So it goes down"), it is not a stipulation of dismissal or other appropriate filing by which Hunter might terminate the case of his own accord. Thus, the Court must still determine on its own whether summary judgment is appropriate.

[4] Indeed, Rooker-Feldman is so similar in its effect to res judicata that it has been called "nearly redundant[,] because most of the actions dismissed for want of jurisdiction also could be resolved by invoking the claim- or issue-preclusion consequences of the state judgments." Edward H. Cooper, *"Rooker-Feldman": Res Judicata as*

*Rooker-Feldman* operates, in some circumstances, even if a plaintiff failed to raise a claim in state court that he raises for the first time in his federal suit. *Feldman*, 460 U.S. at 483, n.16. "The Supreme Court has explained that if the federal claims are '*inextricably intertwined*' with the state court's ruling, the district court has no subject matter over the issue, even if the plaintiff failed to raise the federal claim in the state court." *Fayyumi*, 18 F. Supp. 2d at 913 (quoting *Feldman*, 460 U.S. at 483). Federal courts inquire as to whether the new claims presented are inextricably intertwined with state court judgments in order to determine "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702–03 (7th Cir. 1998). When the injury alleged results from a state court judgment, the plaintiff's federal claim is in the nature of an appeal of a binding state court decision, and barred by *Rooker-Feldman*.[5] *Id.*

In the instant case, RIHA urges that "Plaintiff is clearly seeking to undo the state court judgment in his eviction case." Mem. Supp. Mot. Summ. J. 8. The Court agrees. After RIHA asked Hunter to leave his apartment, he received unfavorable decisions via RIHA's informal and formal review processes, but still did not move out. Only the legal proceedings RIHA instituted against Hunter eventually forced him to move out. Had the Illinois Circuit Court ruled in his

---

*Jurisdiction*, 18B Fed. Prac. & Proc. Juris. § 4469.1 (2d ed.). However, it does matter which doctrine is applied, at the very least because "[w]here Rooker– Feldman applies, lower federal courts have no power to address other affirmative defenses, including res judicata." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996).

[5] RIHA directs the Court's attention to *Fayyumi*'s summary of *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995), which the *Fayyumi* court took to have enunciated a "rule of thumb"—"if the federal plaintiff was the plaintiff in state court, res judicata should be considered, but if the federal plaintiff was the defendant in the state court, Rooker–Feldman should be considered." 18 F. Supp 914 (citing *Homola*, 59 F.3d at 650). However, as the *Fayyumi* court clearly understood, this is just a heuristic, and will not always produce the correct result. Rather, it gets at the underlying tendency that Judge Easterbrook observes in *Homola*: generally, a plaintiff who loses in state court and refiles in federal court is seeking another try at a claim he has already unsuccessfully pursued, and should be estopped from doing so; while a defendant who seeks to relitgate a claim after judgment has been entered against him seeks relief from that judgment, a remedy properly available only on direct appeal or by some other appropriate procedural vehicle, like a motion to reconsider. *Homola*, 59 F.3d at 650. While the *Fayyumi* heuristic applies well to the facts of the instant case, it is easy to analyze the matter without it.

favor, he would not have been required to leave his apartment in Spencer Towers. Hunter seeks relief from the Illinois Circuit Court's grant of possession of his former apartment to RIHA; he seeks relief from a state court judgment. *Rooker-Feldman* teaches that the only federal court with jurisdiction to hear such a request is the Supreme Court. *Rooker*, 263 U.S. at 415–16.

It does not matter that Plaintiff seeks (or may be seeking) damages for discrimination against him at hearings that preceded the Illinois court's decision. It is somewhat difficult to determine all the specific harms Plaintiff alleges, since he does not identify any specific statutory or constitutional violations he believes defendants to have engaged in. However, whether Plaintiff's claims are construed as arising under Section VIII, or as being more general violations of his constitutional rights to due process and equal protection under § 1983, he still seeks to challenge the state court decision. *See Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 825 (7th Cir.1999), cert. denied, 528 U.S. 1118 (2000) ("A plaintiff may not circumvent the effect of the Rooker–Feldman doctrine simply by casting his complaint in the form of a federal civil rights action.").

Insofar as the two hearings held prior to the state court action were discriminatory against Hunter, they had no discriminatory effect upon him until the state court rendered its judgment, because Hunter could not be evicted until RIHA succeeded in its Forcible Entry and Detainer action. The eviction proceedings within RIHA and the subsequent state court proceedings were, in effect, two sides of the same coin, which is to say that they were inextricably intertwined with each other. *See Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 997 (7th Cir. 2000) (holding that when a student was both expelled from school and had a permanent injunction entered against him by a state court preventing him from returning to school, the two actions were not "two sides of the same coin," but rather separate and distinct for *Rooker-Feldman* purposes

8

because of the different and significant "collateral consequences" that ensued from the expulsion). The ultiamte consequences of the two formal hearings were identical to and inseparable from the consequence of the state court proceeding. Put another way, "but for the state court determinations, the federal plaintiff[] would have had no complaint." *Remer*, 205 F.3d at 998. *See, e.g.*, *Garry v. Geils*, 82 F.3d 1362, 1368 (7th Cir. 1996) ("While the plaintiffs complain that the defendants moved the proposed ditch location as an act of political retaliation against them, the injury alleged was only complete when the state court actually condemned the property.").

It also does not matter that Plaintiff did not raise his discrimination claims in the prior state court proceeding. As explained above, Hunter is asking the Court to review a state court decision, which this Court cannot do. All claims of race discrimination Plaintiff makes are also barred by *Rooker-Feldman*, because they are inextricably intertwined with the state court's decision. *Feldman*, 460 U.S. at 486 (1983). If indeed RIHA had asked him to leave his apartment because he is white (or not done so with other residents because they were black), that racial animus would have been a defense to the eviction proceedings in state court, and indeed a partial explanation for the entire sequence of events this case comprises. *See Taylor v. Fed. Nat. Mortgage Ass'n*, 374 F.3d 529, 534 (7th Cir. 2004) (finding causes of action inextricably intertwined for *Rooker-Feldman* purposes when they shared elements). Hunter had a reasonable opportunity to raise the discrimination argument in the state court proceedings; indeed, he had done so at the earlier formal hearing, claiming both that black tenants had not been punished for the same behavior, and that he had been discriminated against at the informal hearing. Jul. 10, 2007 Hunter Letter, RIHA Supporting Exhibits Ex. F. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999) ("[A]n issue cannot be inextricably intertwined with a state court

judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings"). Hunter chose to argue in state court only that "he did not have time to return to his apartment to use his own bathroom," Circuit Court of Rock Island Opinion and Order, RIHA Supporting Exhibits Ex. B 2, but has offered no reason why he could or did not raise the racism claim there, when it had been so integral to his previous argument at the formal hearing.

Hunter does not offer "any significant probative evidence tending to support the complaint," or oppose RIHA's well-supported motion for summary judgment. *Tri-Gen,* 433 F.3d at 1038. Because *Rooker-Feldman* doctrine applies, the Court lacks jurisdiction over Hunter's claims. Hunter's claims must be dismissed, and summary judgment granted to RIHA.

## CONCLUSION

Accordingly, Defendant Rock Island Housing Authority's Motion for Summary Judgment, ECF No. 19, is GRANTED. All of Plaintiff's claims are DISMISSED. The Clerk is directed to enter judgment and close the case.

Entered this 21st day of April, 2015.

>                  s/ Sara Darrow
>                  SARA DARROW
>          UNITED STATES DISTRICT JUDGE